IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JERRY KEMPEL,                          )
                                       )
              Plaintiff,               )
                                       )    CIVIL ACTION
v.                                     )
                                       )    No. 08-4130-JAR-GBC
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
              Defendant.               )
_____)


REPORT AND RECOMMENDATION


    Plaintiff seeks review of a decision of the Commissioner of
Social Security (hereinafter Commissioner) denying disability
insurance benefits (DIB) and supplemental security income (SSI)
under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social
Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and
1382c(a)(3)(A) hereinafter the Act).  Finding error in the
Commissioner's evaluation of the medical opinions, the court
recommends the decision be REVERSED and judgment be entered in
accordance with the fourth sentence of 42 U.S.C. § 405(g)
REMANDING the case for further proceedings.

I.  **Background**

    Plaintiff applied for DIB and SSI on May 24, 2006 alleging
disability since November 19, 2003.  (R. 9, 110-20).  The

applications were denied initially and upon reconsideration, and plaintiff requested a hearing before an administrative law judge (ALJ). (R. 9, 62-65, 83-84). Plaintiff's request was granted, and plaintiff appeared, represented by an attorney, at a hearing before ALJ Edmund C. Werre on December 18, 2007. <u>Id.</u> at 9. At the hearing, testimony was taken from plaintiff and from a vocational expert. (R. 9, 16-61). On May 22, 2008, the ALJ issued a decision in which he found plaintiff is unable to perform his past relevant work, but is able to perform a range of other sedentary unskilled work existing in significant numbers in the economy. (R. 9-15). Consequently, the ALJ found plaintiff is not disabled within the meaning of the Act, and denied the applications. (R. 15).

Plaintiff disagreed with the ALJ's decision and sought but was denied review by the Appeals Council. (R. 1-5). Therefore, the ALJ decision is the Commissioner's final decision. <u>Id.</u> at 1; <u>Blea v. Barnhart</u>, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of the final decision.

## II.  Legal Standard

The court's review is guided by the Act. 42 U.S.C. § 405(g). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the

record and whether the ALJ applied the correct legal standard.
Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v.
Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial
evidence is more than a scintilla, but less than a preponderance,
and it is such evidence as a reasonable mind might accept to
support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200
(10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir.
1988). The court may "neither reweigh the evidence nor
substitute [it's] judgment for that of the agency." White, 287
F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs.,
933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395
F.3d 1168, 1172 (10th Cir. 2005). The determination of whether
substantial evidence supports the Commissioner's decision,
however, is not simply a quantitative exercise, for evidence is
not substantial if it is overwhelmed by other evidence or if it
constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v.
Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual
can establish that he has a physical or mental impairment which
prevents him from engaging in substantial gainful activity and is
expected to result in death or to last for a continuous period of
at least twelve months. 42 U.S.C. § 423(d). The claimant's
impairments must be of such severity that he is not only unable
to perform his past relevant work, but cannot, considering his

age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2008); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy.  Williams, 844 F.2d at 751.  In steps one through

four the burden is on claimant to prove a disability that
prevents performance of past relevant work. Dikeman v. Halter,
245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751
n.2. At step five, the burden shifts to the Commissioner to show
other jobs in the national economy within plaintiff's capacity.
Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## III. Evaluation of Medical Opinions

Here, plaintiff claims only that the ALJ erred in weighing
the medical opinions. Specifically, he argues that the ALJ
failed to consider whether Dr. Hornung's opinion should be given
controlling weight, and that substantial evidence in the record
does not support the determination to accord that opinion "little
weight." (Pl. Br. 10-15). He also argues that the ALJ did not
adequately explain his evaluation of the state agency medical
assessment, and substantial evidence does not support the
evaluation of Dr. Fritz's opinion. (R. 16-23). The Commissioner
argues that the ALJ properly evaluated the medical opinions. He
argues Dr. Hornung was not a treating source when he stated the
opinion at issue, and in any case, substantial evidence in the
record supports the ALJ's determination to give little weight to
the opinion. (Comm'r Br. 5-9). He argues that the RFC assessed
by the ALJ is more favorable to plaintiff's position than that
assessed by the state agency, and points to record evidence
supporting the ALJ's determination not to give substantial weight

-5-

to the state agency assessment. (Comm'r Br. 9-11). Finally, the Commissioner argues that the evidence supports the determination to give little weight to Dr. Fritz's opinion. (Comm'r Br. 12). The Commissioner ends his discussion of the medical opinions with the admonition that, "Where an ALJ articulated adequate reasons for discounting a physician's opinion, the Court must affirm the finding, even if the Court 'may well have reached a different conclusion concerning the weight to be given [the physician's] disability assessment.'" Id.(quoting White, 287 F.3d at 908)(brackets in Comm'r Br.).

The legal standard for evaluating medical opinions in this circuit is explicit and well-known to the court. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Such opinions may never be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2009). It is important to weigh all of the medical source opinions together, especially where "controlling weight" is not

accorded to a treating source opinion, because of "the
necessarily incremental effect of [each individual medical
source's] report on the aggregate assessment of the evidentiary
record." Lackey v. Barnhart, No. 04-7041, 127 Fed. Appx. 455,
459 (10th Cir. Apr. 5, 2005). Evidence from nonexamining sources
such as state agency physicians and medical experts is also
medical opinion evidence. 20 C.F.R. § 404.1527(f). ALJ's are
not bound by these opinions but must consider them, except for
opinions regarding the ultimate issue of disability. Id.,
§ 404.1527(f)(2)(i). The ALJ must also explain in the decision
the weight given opinions of such nonexamining sources. Id.,
§ 404.1527(f)(2)(ii & iii).

    A physician who has treated a patient frequently over an
extended period of time (a treating source)[1] is expected to have
greater insight into the patient's medical condition. Doyal v.
Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion
of an examining physician [(a nontreating source)] who only saw
the claimant once is not entitled to the sort of deferential
treatment accorded to a treating physician's opinion." Id. at

_____

    [1]The regulations define three types of medical sources:
    "Treating source:" a medical source who has provided the
claimant with medical treatment or evaluation in an ongoing
treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.
    "Nontreating source:" a medical source who has examined the
claimant, but never had a treatment relationship. Id.
    "Nonexamining source:" a medical source who has not
examined the claimant, but provides a medical opinion. Id.

763 (citing <u>Reid v. Chater</u>, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407, 412 (10th Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789 (7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); <u>see also</u>, SSR 96-2p, West's Soc. Sec. Rulings 111-15 (Supp. 2009).  The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  <u>Id.</u> at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must determine whether the opinion is consistent with

other substantial evidence in the record. <u>Id.</u> (citing SSR 96-2p). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." <u>Id.</u>

If the treating source opinion is not given controlling weight, the inquiry does not end. <u>Id.</u> A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." <u>Id.</u> Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. <u>Id.</u> at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see</u> <u>also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human Servs.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons for the weight he gives the treating source opinion. <u>Id.</u> 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." <u>Id.</u>

(citing <u>Miller v. Chater</u>, 99 F.3d 972, 976 (10th Cir. 1996)
(quoting <u>Frey v. Bowen</u>, 816 F.2d 508, 513 (10th Cir. 1987)).

SSR 96-8p establishes narrative discussion requirements for
an ALJ's RFC assessment.  West's Soc. Sec. Rulings at 149 (Supp.
2009).  The discussion is to cite specific medical facts to
describe how the evidence supports each conclusion.  <u>Id.</u>  The
narrative discussion must include consideration of the
credibility of plaintiff's allegations of symptoms and
consideration of medical opinions regarding plaintiff's
capabilities.  <u>Id.</u> at 149-50.  If the ALJ's RFC assessment
conflicts with a medical source opinion, the ALJ must explain why
he did not adopt the opinion.  <u>Id.</u> at 150.

Here, the ALJ summarized the evidence of record.  (R. 12-
13).  He next concluded that plaintiff's allegations of symptoms
resulting from his impairments are not credible.  (R. 13).  And
finally, at the end of his RFC analysis, he discussed the medical
opinion evidence:

> As for the opinion evidence, the undersigned gives
> little weight to the opinion of a medical source which
> is documented in Exhibit 3F [(Dr. Hornung)] that the
> claimant had marked difficulty with his ability to
> stand and/or walk.  The claimant reported being capable
> of walking and using a bicycle for transportation.  The
> undersigned also observed at the hearing that the
> claimant sat through the entire hearing without much
> difficulty which is inconsistent with the opinion in
> Exhibit 3F.
>
> The undersigned gives little weight to the September
> 2006 opinion of a medical source who opined that the
> claimant has bilateral neuroforaminal narrowing [(Dr.

Fritz)].  (Exhibit 5F)  Even so there is no evidence of
nerve root impingement.  (Exhibit 1F)

The undersigned does not give substantial weight to the
opinions of the Disability Determination Services (DDS)
physicians because their opinions are inconsistent with
the medical evidence and the claimant's testimony.

(R. 13-14)(physician's names inserted).  Exhibit 3F is a

"Statement of Medical Condition" form promulgated by the Kansas

Department of Social and Rehabilitation Services (SRS) and was

completed by Dr. Hornung on May 8, 2006.  (R. 217-23).  Exhibit

5F is a neurosurgical consultation report prepared on September

11, 2006 by Dr. Fritz and addressed to Dr. Hornung.  (R. 227-31).

Exhibit 1F is medical treatment records provided by Dr. Hornung

and contains a "Radiology Report" of an MRI of plaintiff's lumbar

spine dated June 7, 2006 and signed by Dr. Mais.  (R. 204-08).

It is not absolutely clear to what the ALJ refers when he speaks

of "the opinions of the Disability Determination Service (DDS)

physicians" (R. 14), but the record contains a "Physical RFC

Assessment" completed by Kyle D. Aarnes, a DDS "SDM" (single

decision maker), at the initial review on July 5, 2006 (R. 209-

16), and a "Report of Contact" signed by Dr. Siemsen of the DDS

at the reconsideration determination on October 23, 2006, and

affirming "SDM #82's 07/05/06 SED RFC."  (R. 235).

The court addresses the ALJ's evaluation of each opinion

individually, and then addresses his consideration of the

opinions as a whole.  Plaintiff is correct both that the ALJ

failed to consider whether Dr. Hornung's opinion should be given
controlling weight, and that the record evidence does not support
the determination to accord the opinion "little weight." (Pl.
Br. 10-15). In the SRS form, Dr. Hornung checked a block
containing standardized language indicating "Marked difficulty
standing or walking which is expected to persist for at least 12
months and results in severe functional limitations." (R.
219)(emphasis added). The form language is presented in the
disjunctive - "difficulty standing or walking." Id.(emphasis
added). Dr. Hornung clarified his opinion when he later wrote on
the SRS form, "He cannot stand for more than 5-10 minutes due to
pain." (R. 222)(emphasis added). Thus, in context, Dr. Hornung
opined that plaintiff has marked difficulty in standing, and can
not stand more than five to ten minutes. However, the ALJ
characterized Dr. Hornung's opinion in the conjunctive - that
plaintiff "had marked difficulty with his ability to stand and/or
walk." (R. 13)(emphasis added). The ALJ's characterization is
not supported by the record evidence and is erroneous.

The ALJ gave Dr. Hornung's opinion "little weight" because
plaintiff reported an ability to walk and use a bicycle, and sat
throughout the hearing "without much difficulty which is
inconsistent with" Dr. Hornung's opinion. (R. 13). A fair
reading of Dr. Hornung's opinion reveals that it does not address
the abilities to walk, to ride a bicycle, or to sit. Therefore,

-12-

contrary to the ALJ's finding, plaintiff's reported ability to walk and use a bicycle, and his ability to sit throughout the hearing are not inconsistent with Dr. Hornung's opinion. The ALJ erred in characterizing Dr. Hornung's opinion, and substantial evidence in the record does not support the ALJ's reasons for according "little weight" to the opinion.

Further, the ALJ did not consider whether Dr. Hornung's opinion is worthy of controlling weight. Only a treating source opinion might be worthy of controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p. The Commissioner's argument, that Dr. Hornung was not a "treating source" within the meaning of the regulations when he stated his medical opinion in the SRS form, goes more to the weight the opinion should be given than to demonstrating that Dr. Hornung was not a treating source. The record is clear that Dr. Hornung treated plaintiff between April and December, 2006. (R. 204-08, 232-34, 246-57). In any case, the Commissioner points to no evidence in the decision (and the court finds none) indicating that the ALJ considered whether Dr. Hornung is a "treating source," or that he considered whether Dr. Hornung's opinion should be given "controlling weight."

The ALJ's determination that Dr. Fritz's opinion (that plaintiff has bilateral neuroforaminal narrowing) is worthy of "little weight" is especially troubling to the court. The ALJ stated that he gave the opinion "little weight," but he stated no

reason for doing so.  Then, he stated, "Even so there is no
evidence of nerve root impingement."  (R. 13).

Perhaps the ALJ intended to give Dr. Fritz's opinion little
weight because there is no evidence of nerve root impingement.
However, there is no record evidence that "significant bilateral
neuroforaminal narrowing" with a "patent" central canal, as found
by Dr. Fritz (R. 227) is inconsistent with the MRI finding by Dr.
Mais in Exhibit 1F of a "very minimal midline disc protrusion at
L5-S1," which "indents the thecal sac to a minimal degree," but
"does not appear to impinge upon the nerve roots within the
thecal sac or neural foramen."  (R. 207).  Dr. Mais's opinion
states that the disc protrusion does not impinge the nerve roots
in the neural foramen, but it says nothing regarding narrowing of
the neural foramen.  The record evidence does not indicate that a
midline disc protrusion is capable of narrowing the neural
foramen.  Perhaps it is, but the ALJ and this court are not
medical experts qualified to make such a determination.  The
record evidence simply does not explain the relationship between
the two opinions (or even that there is a relationship between
the opinions), and there is no indication, beyond the ALJ's
oblique assertion, that the opinions are inconsistent.

Moreover, even assuming the two medical opinions are
inconsistent, an ALJ may not simply choose one opinion over the
other.  He must explain the basis for preferring one medical

-14-

opinion over the other. As noted above, he is not a medical expert qualified to evaluate the medical evidence, and may not reject a medical source's opinion on the basis of speculation or of his own lay opinion. McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). Substantial evidence in the record as a whole does not support the ALJ's determination that Dr. Fritz's opinion is worthy of little weight.

Finally, plaintiff argues that the ALJ did not adequately explain his evaluation of the state agency medical assessment. The court agrees.

Before discussing the ALJ's error in this regard, the court finds it necessary to comment on one issue not directly addressed in the parties' briefs. As the court noted above, it is not clear to what the ALJ refers when he speaks of "the opinions of the Disability Determination Service (DDS) physicians." (R. 14). The record contains a "Physical RFC Assessment" completed by Kyle D. Aarnes a DDS "SDM" (single decision maker) at the initial review on July 5, 2006 (R. 209-16), and a "Report of Contact" signed by Dr. Siemsen of the DDS at the reconsideration determination on October 23, 2006, and affirming "SDM #82's 07/05/06 SED RFC." (R. 235). Plaintiff noted in his brief that "It is unclear from the form if Aarnes is a medical doctor or simply a consultant." (Pl. Br. 16, n.1). The Commissioner noted that Mr. Aarnes is a single decision maker and that his RFC

assessment was later affirmed by Dr. Siemsen. (Comm'r Br. 9,
n.2). However, "[a]n SDM is not a medical professional of any
stripe, and the opinion of an SDM therefore is entitled to no
weight." Ky v. Astrue, No. 08-cv-00362-REB, 2009 WL 68760 at *3
(D. Colo. Jan. 8, 2009).

The court is troubled by the Commissioner's use of RFC
Assessment forms completed by "single decision makers" who are
not "acceptable medical sources" within the meaning of the
regulations but who "sign" the forms by placing their name
(without title such as Mr., Ms., M.D., or Ph.D.) in the space
designated "Medical Consultant's Signature" and without
explanation that they are not an "acceptable medical source," a
medical consultant, or any kind of medical professional. This
practice leads to errors where ALJ's accept or rely upon the
SDM's RFC assessment as a medical opinion. Houghtaling v.
Astrue, No. 08-2656-KHV-GBC, slip op. at 2, 3, (D. Kan. Nov. 10,
2009)(recognizing ALJ erroneously relied upon opinion of SDM)
adopted by district court, (Dec. 1, 2009); Stanley v. Astrue, No.
09-20485-CIV, 2009 WL 3060394 (S.D. Fla. Sept. 24,
2009)(remanding with directions not to rely upon determination by
SDM); Lawrence v. Astrue, No. 08-cv-00483-RPM, 2009 WL 3158149 at
*1 (D. Colo. Sept. 24, 2009)(ALJ gave "significant weight" to
report of SDM); Foxx v. Astrue, No. 08-00403-KD-B, 2009 WL
2899048 at *7, (S.D. Ala. Sept. 3, 2009)(ALJ relied upon SDM

assessment); <u>Lindsay v. Astrue</u>, No. 08-0892-CV-W-GAF-SSA, 2009 WL
2382337 at *4 (W.D. Mo. July 30, 2009)(ALJ factually incorrect in
referring to SDM as medical consultant); <u>Johnson v. Astrue</u>, No.
4:07CV1715 JCH, 2009 WL 1531843 at *2 (E.D. Mo. May 29,
2009)(Commissioner agreed ALJ relied upon RFC of SDM); <u>Smith v.
Astrue</u>, No. 3:07-cv-1165-J-TEM, 2009 WL 890391 at *11 (M.D. Fla.
March 31, 2009)(ALJ improperly classified SDM as physician);
<u>Moore v. Astrue</u>, No. 07-115-GWU, 2008 WL 4400685 at *5 (E.D. Ky.
Sept. 23, 2008)(ALJ relied upon opinion of, among others, SDM);
<u>Jones v. Astrue</u>, No. 1:07-cv-0698-DFH-WTL, 2008 WL 1766964 at *9
(S.D. Ind. April 14, 2008)(ALJ weighed opinion of SDM as opinion
of a nonexamining physician); <u>Burnham v. Astrue</u>, No. 06-124-P-H,
2007 WL 951386 at *2 (D. Me. March 27, 2007)(ALJ wrongly accorded
weight to opinion of SDM).  Moreover, at least one court in this
district has relied upon the opinion of a single decision maker,
along with other evidence, as "<u>medical evidence</u> that plaintiff
can work full-time."  <u>Sawyer v. Astrue</u>, No. 08-2114-KHV, 2009 WL
634666 at *7 (D. Kan. March 11, 2009)(report and
recommendation)(emphasis added).

Because Dr. Siemsen affirmed Mr. Aarnes's assessment, the
"opinions" to which the ALJ refers in the decision, include the
medical opinion of an "acceptable medical source," and the ALJ's
"error in referring as well to the report of the non-physician

does not require remand." <u>Zebulske v. Barnhart</u>, No. 04-49-B-W, 2004 WL 2378854, *2 n.2 (D. Me. Oct. 25, 2004).

Nonetheless, the ALJ's evaluation of the opinion is erroneous and requires remand. The ALJ stated that the opinion was not accorded substantial weight because it is "inconsistent with the medical evidence and the claimant's testimony." (R. 14). However, he points to no evidence and to none of plaintiff's testimony which is inconsistent with the opinion.

The court finds the ALJ improperly weighed the medical opinions. Therefore, despite the Commissioner's admonition that the court must affirm an ALJ's findings where he articulated adequate reasons for discounting a physician's opinion, the ALJ here provided merely conclusory reasons for discounting the opinions which are inadequate to support his determination.

The ALJ not only erred in weighing the individual opinions, but he erred in weighing the opinions as a whole. Here, the ALJ identified three medical opinions in the record, and decided to give little weight to each of them. (R. 13-14). Moreover, he found plaintiff's allegations not credible. (R. 13). However, he did not explain the basis for his RFC assessment. He did not follow the dictates of SSR 96-8p that he cite specific medical facts to describe how the evidence supports each RFC conclusion.

The ALJ here followed a procedure which appears to have become an ever-increasing practice when assessing RFC in Social

Security decisions. He summarized the legal standard for assessing RFC. (R. 12, first three paragraphs after Finding No. 5). He summarized the record evidence, beginning with a summary of plaintiff's testimony. Id., fourth paragraph after Finding No. 5. He summarized the medical evidence of record. (R. 12, last paragraph -13, first two paragraphs). (The ALJ's summary of 126 pages of section "E" and section "F" records, and 36 pages of plaintiff's testimony from the hearing transcript consists of four paragraphs.) The ALJ stated his credibility analysis and finding in the third and four paragraphs of page 13 of the record, and then stated his evaluation of the medical opinions as quoted, supra at 10-11, in the fifth and sixth paragraphs of page 13, and the first paragraph of page 14 of the record.

Nowhere did the ALJ relate the evidence to his findings regarding the medical opinions, or cite specific medical facts to describe how the evidence supports each RFC conclusion. He summarized the evidence and stated the conclusions he drew, but he did not explain why that evidence requires those conclusions, or the analysis used to reach the conclusions. It is as if the ALJ distinguished all of the medical opinions in the record and then produced his own RFC assessment out of whole cloth. As Judge Belot noted in a case several years ago, "the ALJ simply listed all the evidence contained in the record and then set forth his conclusion without explaining the inconsistencies and

ambiguities contained in the opinions. He did not connect the dots, so to speak, as is required by S.S.R. 96-8p." <u>Kency v. Comm'r of Soc. Sec.</u>, No. 03-1190-MLB, 2004 WL 5542829, 4 (D. Kan. Nov. 16, 2004).

As is often the case in situations such as this, the Commissioner in his brief attempted to justify the ALJ's evaluation of the medical opinions by citing to medical evidence in the record which supports the evaluation. (Comm'r Br. 5-11). However, much of the Commissioner's argument is based upon citation to record evidence which was not even included in the ALJ's summary of the evidence. <u>E.g.</u> (Comm'r Br. 5)(Dr. Hornung saw plaintiff only once before stating his opinion); (Comm'r Br. 6)(<u>April, 2006 exam</u> revealed normal gait, good back range of motion); (Comm'r Br. 7)(infrequent medical contacts, plaintiff worked despite back condition before February 2005, September 2007 treatment records do not even mention back problems, Dr. Hornung did not examine musculoskeletal system); (Comm'r Br. 8)(gait, station, strength, coordination, and reflexes normal in <u>December 2006</u>); (Comm'r Br. 9)(state agency assessment did not indicate a sit/stand option); (Comm'r Br. 10)(plaintiff testified both that he reclines five or six hours, and that he stands and stretches six hours); (Comm'r Br. 11)(Dr. Fritz's physical exam indicated good strength, intact sensation, normal reflexes; antalgic gait, but able to walk on heels and toes). Moreover,

the Commissioner's citation to evidence the ALJ in fact summarized in the decision is not helpful in support of the ALJ's findings because the ALJ did not link the evidence to his findings in even the most tenuous way.

The court is without authority to weigh the evidence in the first instance, or substitute its judgment for that of the Commissioner. Cagle v. Califano, 638 F.2d 219, 220 (10th Cir. 1980)(citing Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966)); see also, Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)("this court should not properly engage in the task of weighing evidence in cases before the Social Security Administration").  A decision should be evaluated based solely on the reasons stated therein. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  It cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  Nor may a reviewing court create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  While there may be evidence in the record from which the Commissioner might properly discount the three medical opinions discussed here, and from which the Commissioner might properly assess the RFC assessed here, the ALJ did not do so, and the court is without authority to do so.

Therefore remand is necessary for the Commissioner to properly evaluate the medical opinions, explain his evaluation, and explain how the evidence supports the RFC findings.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within fourteen days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this <u>14th</u> day of December 2009, at Wichita, Kansas.


<u>s:/   Gerald B. Cohn  </u>
**GERALD B. COHN**
**United States Magistrate Judge**